**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| LUCIUS JUNEVICUS,<br><br>Plaintiff,<br><br>vs.<br><br>BLS OPS, LLC d/b/a BLACK LANTERN SECURITY; BLS GOVERNMENT SERVICES, LLC; MICHEAL RESKI; PHILIP HARTLIEB; and LARRY CAMPBELL,<br><br>Defendants. | Civil Action No. 2:26-cv-05761-BHH<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff Lucius Junevicus, by and through his undersigned counsel, alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Lucius Junevicus (hereinafter referred to as "Junevicus" or "Plaintiff") is, and at all times pertinent herein has been, an adult citizen of the United States domiciled in the State of Florida.

2. Upon information and belief, Defendant BLS Ops, LLC (hereinafter referred to as "BLS Ops") is a South Carolina limited liability company with its principal place of business in Charleston County, South Carolina, and does business under the tradename "Black Lantern Security."

3. Upon information and belief, BLS Ops is in the business of providing cybersecurity consulting services, including penetration testing, red-team and purple-team

exercises, adversarial assessments, threat emulation, and attack-surface management, to enterprise clients.

4. Upon information and belief, the members of BLS Ops are Defendants Micheal Reski, Philip Hartlieb, and Larry Campbell.

5. Upon information and belief, Defendant BLS Government Services, LLC (hereinafter referred to as "BLS Government") is a South Carolina limited liability company with its principal place of business in Charleston County, South Carolina.

6. Upon information and belief, the members of BLS Government are Defendants Reski, Hartlieb, and Campbell. BLS Ops and BLS Government are hereinafter referred to collectively as the "Companies" or "BLS."

7. At all times pertinent herein, Defendant Micheal Reski (hereinafter referred to as "Reski") was and is a principal, member, and co-owner of the Companies and a party to the Agreement described below as a "Remaining Owner." Upon information and belief, Reski is a citizen and resident of the State of Colorado.

8. At all times pertinent herein, Defendant Philip Hartlieb (hereinafter referred to as "Hartlieb") was and is a principal, member, and co-owner of the Companies and a party to the Agreement as a "Remaining Owner." Upon information and belief, Hartlieb is a citizen and resident of Charleston County, South Carolina.

9. At all times pertinent herein, Defendant Larry Campbell (hereinafter referred to as "Campbell") was and is a principal, member, and co-owner of the Companies and a party to the Agreement as a "Remaining Owner." Upon information and belief, Campbell is a citizen and resident of the State of North Carolina. Reski, Hartlieb, and Campbell are hereinafter referred to collectively as the "Remaining Owners."

10. As set forth herein, the Companies have failed to honor the terms and provisions of the agreement by which they redeemed Plaintiff's ownership interests. The Companies are attempting to evade their obligation to pay the installment payments owed to Plaintiff by falsely claiming that he violated a covenant not to compete, even though the Companies have never identified any competing activity by Plaintiff.

11. Except as otherwise stated below, at all times pertinent herein, in committing and/or participating in the acts and omissions alleged herein, the Remaining Owners acted both in their individual capacities as parties to the Agreement and as members, managers, and/or agents of the Companies, within the course and scope of their authority and with the express or implied consent of the Companies.

12. There is complete diversity of citizenship among the parties. Plaintiff is a citizen of Florida. Upon information and belief, no Defendant is a citizen of Florida, and no member of either Company is a citizen of Florida. The matter in controversy, exclusive of interest, attorneys' fees, and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00). The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

13. This Court is authorized to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

14. This Court has personal jurisdiction over each Defendant. The Companies are organized under the laws of South Carolina and maintain their principal places of business in South Carolina, and each Remaining Owner, as a member and manager of the Companies and a party to an agreement governed by South Carolina law, transacted business in South Carolina, and directed the conduct alleged here from and toward South Carolina. Jurisdiction is proper

pursuant to South Carolina law, including but not limited to S.C. CODE ANN. §§ 36-2-802 and 36-2-803.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as the substantial parts of the acts, events, or omissions giving rise to this action occurred in this District. Venue is proper in the Charleston Division pursuant to Local Civil Rule 3.01 (D.S.C.).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

16. Plaintiff co-founded the Companies. Prior to the redemption described below, Plaintiff owned membership interests in each of the Companies.

17. Upon information and belief, substantially all of the Companies' revenue is derived from professional cybersecurity consulting services and is booked as consulting income. The Companies do not sell software products.

18. Effective May 21, 2024, Plaintiff, the Companies, the Remaining Owners, MMCTF Holdings, LLC, and Mary Fabian entered into a written Unit Redemption Agreement (hereinafter the "Agreement"). The Agreement is incorporated herein by reference.

19. Pursuant to the Agreement, the Companies redeemed all of Plaintiff's membership units, and Plaintiff withdrew as a member and resigned from all positions with the Companies. (Agreement §§ 1, 4.)

20. In exchange, the Companies agreed to pay Plaintiff an upfront payment plus deferred consideration (the "Additional Consideration"), payable quarterly in arrears during a defined period (the "Calculation Period"). (Agreement § 2(a).)

21. The amount of the Additional Consideration is determined by a formula set forth in the Agreement that is based on the Companies' financial results, and the Companies must pay Plaintiff at least the full annual amount so determined. (Agreement § 2(b).)

22. The Calculation Period began in 2024 and runs for a term of years, subject to extension. (Agreement § 2(c).) The total Additional Consideration payable to Plaintiff is subject to a maximum aggregate amount (the "Payment Cap"). (Agreement § 2(g).)

23. Section 2(e) of the Agreement requires that each quarterly payment be accompanied by an itemized accounting of the Companies' calculation of the Additional Consideration, and grants Plaintiff the right, upon reasonable notice, to examine and copy the Companies' books and records at any time during the Calculation Period.

24. Section 2(h) of the Agreement provides that each Company is jointly and severally liable for the obligations of the other Company under the Agreement, including the payment of Additional Consideration.

25. No provision of the Agreement conditions the Companies' payment obligations on Plaintiff's compliance with any covenant, and no provision permits the Companies to withhold, suspend, or set off any payment based upon an alleged breach of the Agreement by Plaintiff.

26. In Section 7(b) of the Agreement, each Remaining Owner personally covenanted to Plaintiff that, during the Calculation Period, he would not, either directly or indirectly, take any action designed to circumvent the Agreement or Plaintiff's rights under it, including any action that purposefully impairs or reduces the consideration payable to Plaintiff and would operate in good faith with respect to the Agreement.

27. In Section 8(b) of the Agreement, the Companies agreed that, following the closing, they would make certain tax distributions to Plaintiff relating to the portion of 2024 during which he held units.

28. In Section 9(b) of the Agreement, the Companies agreed to indemnify Plaintiff against losses, costs, fees, and expenses, including reasonable attorneys' fees, that he incurs as a

result of (1) any breach of the Agreement by the Companies or (2) the actions, omissions, or operations of the Companies on or after the effective date of the Agreement (the "Effective Date").

29. Section 15 of the Agreement restricts Plaintiff, during the Calculation Period, from engaging in, or holding certain interests in a business that engages in, the "Business," and from soliciting certain of the Companies' business relationships and personnel. The Agreement defines the "Business" by reference to information-technology security consulting services and the development and commercialization of related security software and controls. (Agreement, Recital A.)

30. Section 18 of the Agreement provides that it is governed by South Carolina law. The Agreement contains no forum-selection, arbitration, or jury-waiver provision.

31. At all times pertinent herein, Plaintiff has duly performed his obligations under the Agreement. Plaintiff conveyed his units, resigned his positions, returned the Companies' property, and has not used or disclosed the Companies' confidential information or solicited their customers, vendors, contractors, or employees.

32. For nearly two years, the Companies performed under the Agreement without objection. The Companies paid Plaintiff the upfront payment at closing and made quarterly payments of Additional Consideration from July 2024 through January 2026. A substantial balance of Additional Consideration remains payable to Plaintiff under the Agreement, up to the Payment Cap.

33. The Companies' own payment calculations show that their revenue exceeded the annual revenue threshold set forth in the Agreement in 2024 and, upon information and belief, in 2025.

34. AutomateNetOps.AI (hereinafter "AutomateNetOps") is a software company owned and operated by Plaintiff's brother, Curtis Junevicus. AutomateNetOps develops Regnor™, a platform used by network engineers to design, automate, test, and manage network configuration workflows across multi-vendor network equipment.

35. AutomateNetOps does not provide security consulting, penetration testing, red-team exercises, vulnerability assessments, threat emulation, or any other service that the Companies provide. AutomateNetOps does not develop or sell software whose purpose is to respond to, defend against, or challenge adversaries or hackers. Like any enterprise software, Regnor™ protects its own credentials and data and can check network configurations against compliance standards; those functions serve its network-operations purpose.

36. Plaintiff holds no ownership interest in AutomateNetOps. Plaintiff is not a member, officer, employee, lender, or consultant of AutomateNetOps, has not invested in or loaned money to AutomateNetOps, and does not manage or direct its operations. No money has been paid by Plaintiff to AutomateNetOps. From time to time, Plaintiff has made personal transfers to his brother to help him personally. Those transfers were made to his brother, not to AutomateNetOps, and Plaintiff received no ownership interest, debt, or other right in AutomateNetOps in exchange.

37. On or about April 10, 2026, Curtis Junevicus added Plaintiff's name and a short biography to the AutomateNetOps website, describing Plaintiff as a "Co-Founder."

38. On April 14, 2026, upon information and belief within days after Plaintiff's name appeared on the AutomateNetOps website, the Companies' counsel sent Plaintiff a letter accusing him of violating the covenant not to compete. The letter misspelled Plaintiff's name and demanded a response within one day.

39. Through counsel, Plaintiff promptly responded, denied any breach, and explained in writing on April 28, 2026 that AutomateNetOps is not engaged in the "Business."

40. A quarterly installment for the first quarter of 2026 was due on or before April 15, 2026. The Companies made no payment and provided no accounting.

41. Upon information and belief, the Companies, through counsel, stated that they would not make further payments unless Plaintiff demonstrated to their satisfaction that he had not breached the Agreement.

42. The installment for the second quarter of 2026 was due on or before July 15, 2026. The Companies failed or refused to pay it and did not provide the required accounting.

43. On August 26, 2026, Plaintiff, through counsel, again denied any breach and voluntarily provided the Companies with sworn affidavits from himself and from Curtis Junevicus, materials documenting the publicly available product information of AutomateNetOps, and a comparison of the two businesses. Plaintiff demanded that the Companies release the withheld payment within ten days. The Companies failed or refused to pay.

44. The installment for the third quarter of 2026 was due on or before October 15, 2026. The Companies failed or refused to pay it and did not provide the required accounting.

45. To date, the Companies have not identified any customer that Plaintiff solicited, any confidential information that he used, or any product or service of AutomateNetOps that competes with any product or service of the Companies.

46. Upon information and belief, the Remaining Owners, who own and control the Companies, made, directed, or approved the decision to stop paying Plaintiff.

47. Plaintiff held his units from January 1, 2024 through May 21, 2024 and, upon information and belief, was allocated a share of the Companies' taxable income for that period.

48. On or about June 15, 2024, the Companies paid each Remaining Owner a tax distribution for the second calendar quarter of 2024. Upon information and belief, the Companies made no tax distribution to Plaintiff for the first or second calendar quarter of 2024 and did not make the additional 2024 tax distribution required by Section 8(b).

49. Plaintiff has demanded and/or requested that the Companies honor the terms and provisions of the Agreement and pay him the amounts due. Plaintiff's efforts have been rebuffed or ignored, and Plaintiff has incurred, and continues to incur, attorneys' fees and costs to enforce his rights.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract/Breach of Covenant of Good Faith & Fair Dealing as to BLS Ops, LLC and BLS Government Services, LLC)**

50. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

51. The Agreement is a binding and enforceable contract between Plaintiff and the Companies.

52. The Agreement includes an implied covenant of good faith and fair dealing, which requires that the Companies act in all respects in good faith toward Plaintiff.

53. At all times pertinent herein, Plaintiff has performed his obligations in accordance with the Agreement, and all conditions to the Companies' payment obligations have been satisfied or excused.

54. The Companies have materially breached the terms and provisions of the Agreement and have breached the implied covenant of good faith and fair dealing by, inter alia:

a. failing or refusing to pay the Additional Consideration due on or before July 15, 2026 for the second calendar quarter of 2026;

b. failing or refusing to pay the Additional Consideration due on or before October 15, 2026 for the third calendar quarter of 2026; and

c. conditioning further payment on Plaintiff disproving unsupported allegations, a condition found nowhere in the Agreement.

55. Pursuant to Section 2(h) of the Agreement, each Company is jointly and severally liable for these obligations.

56. As a direct and proximate result of the Companies' breaches of the Agreement and of the implied covenant of good faith and fair dealing, Plaintiff has been damaged and has suffered actual, consequential, and special damages, including, but not limited to, the loss of the Additional Consideration due under the Agreement, in an amount to be determined by the trier of fact, including the installments due July 15, 2026 and October 15, 2026, together with each additional installment that comes due and is not paid during the pendency of this action; prejudgment interest at the rate of 8.75% per annum pursuant to S.C. CODE ANN. § 34-31-20(A); plus such other actual, consequential, special, and incidental damages as the evidence may show, and his costs and expenses incurred in the prosecution of this action.

57. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

**FOR A SECOND CAUSE OF ACTION**
**(Anticipatory Repudiation as to BLS Ops, LLC and BLS Government Services, LLC)**

58. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

59. Upon information and belief, through the statement and conduct of their counsel, the Companies have clearly and unequivocally communicated that they will not pay further Additional Consideration unless Plaintiff satisfies a condition that appears nowhere in the Agreement.

60. The Companies' refusal to perform their future payment obligations except upon terms the Agreement does not contain constitutes a repudiation of the Agreement.

61. Plaintiff is entitled to recover each installment of Additional Consideration as it comes due, together with prejudgment interest at the rate of 8.75% per annum pursuant to S.C. CODE ANN. § 34-31-20(A), and to a declaration that the Companies remain obligated to pay all Additional Consideration through the end of the Calculation Period, up to the Payment Cap.

62. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

**FOR A THIRD CAUSE OF ACTION**
**(Breach of Contract and Accounting as to BLS Ops, LLC and BLS Government Services, LLC)**

63. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

64. Section 2(e) of the Agreement requires the Companies to accompany each quarterly payment with an itemized accounting of the Additional Consideration, and grants Plaintiff the right to examine and copy the Companies' books and records.

65. The Companies have breached Section 2(e) by failing or refusing to provide the required accountings for every calendar quarter of the Calculation Period other than the third calendar quarter of 2024.

66. The amount of Additional Consideration owed to Plaintiff depends upon the Companies' financial information, which is solely within the Companies' possession. Upon information and belief, the Companies have treated certain recurring draws and advances to the Remaining Owners as non-cash items, which may have understated the amounts used to calculate the Additional Consideration.

67. Plaintiff is further informed and believes he is entitled to a full accounting from the Companies for each quarter of the Calculation Period, such accounting to include the Companies' revenues, distributions and draws to members, and compensation to the Remaining Owners, together with access to inspect and copy the Companies' books and records, and to recover any additional Additional Consideration that the accounting shows to be due.

68. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

**FOR A FOURTH CAUSE OF ACTION**
**(Breach of Contract; 2024 Tax Distributions as to BLS Ops, LLC and BLS Government Services, LLC)**

69. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

70. Section 8(b) of the Agreement required the Companies to make tax distributions to Plaintiff for the first and second calendar quarters of 2024 and an additional tax distribution for 2024.

71. Upon information and belief, the Companies made tax distributions to the Remaining Owners but failed or refused to make the tax distributions owed to Plaintiff, in breach of Section 8(b).

72. As a direct and proximate result of the Companies' breach, Plaintiff has been damaged and has suffered actual damages in the amount of the unpaid tax distributions, prejudgment interest at the rate of 8.75% per annum pursuant to S.C. CODE ANN. § 34-31-20(A), plus such other actual, consequential, special, and incidental damages as the evidence may show.

73. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

**FOR A FIFTH CAUSE OF ACTION**
**(Breach of Contract as to Micheal Reski, Philip Hartlieb, and Larry Campbell)**

74. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

75. Each Remaining Owner is a party to the Agreement and personally covenanted to Plaintiff in Section 7(b) not to engage or participate, directly or indirectly, in any action that purposefully impairs or reduces the consideration payable to Plaintiff, and to operate in good faith with respect to the Agreement.

76. Upon information and belief, each Remaining Owner made, directed, approved, or participated in the decision to stop paying Plaintiff the Additional Consideration due under the Agreement, knowing that the Agreement provided no basis for doing so.

77. The Remaining Owners' conduct purposefully impaired and reduced the consideration payable to Plaintiff and breached each Remaining Owner's covenant to operate in good faith with respect to the Agreement.

78. As a direct and proximate result of the Remaining Owners' breaches, Plaintiff has been damaged and has suffered actual, consequential, and special damages in an amount to be determined by the trier of fact, prejudgment interest at the rate of 8.75% per annum pursuant to

S.C. CODE ANN. § 34-31-20(A), plus such other actual, consequential, special, and incidental damages as the evidence may show. Each Remaining Owner is severally liable for his breach.

79. Plaintiff is further entitled to recover from the Remaining Owners, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, as permitted by law.

**FOR A SIXTH CAUSE OF ACTION**
**(Contractual Indemnification as to BLS Ops, LLC and BLS Government Services, LLC)**

80. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

81. Section 9(b)(2) of the Agreement obligates the Companies to indemnify and hold Plaintiff harmless from all losses, costs, fees, and expenses, including reasonable attorneys' fees, that he incurs as a result of the actions, omissions, or operations of the Companies on or after the Effective Date.

82. The Companies' withholding of the Additional Consideration, failure to provide the required accountings, and failure to make the required tax distributions are actions and omissions of the Companies occurring after the Effective Date.

83. As a result of those actions and omissions, Plaintiff has incurred and continues to incur losses, including attorneys' fees and costs, beginning in April 2026 and continuing through the prosecution of this action.

84. In the alternative, the same losses result from the Companies' breaches of the Agreement within the meaning of Section 9(b)(1).

85. Plaintiff is entitled to judgment against the Companies, jointly and severally, for all such losses, including his reasonable attorneys' fees and costs.

**FOR A SEVENTH CAUSE OF ACTION**
**(Declaratory Judgment as to All Defendants)**

86. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

87. An actual, substantial, and justiciable controversy exists between Plaintiff and Defendants concerning their respective rights and obligations under the Agreement. The Companies contend that Plaintiff has breached Section 15 and that they may withhold payment as a result. Plaintiff contends that he has not breached Section 15, that Section 15 is unenforceable, and that the Companies must continue to perform.

88. AutomateNetOps does not engage in the "Business" as defined in the Agreement. It provides no consulting services, and it does not develop or commercialize software to respond to, defend against, or challenge adversaries, hostile parties, hackers, or bad actors.

89. Plaintiff has not engaged in the "Business," has not become interested in any business that engages in the "Business," and has not solicited any of the Companies' customers, vendors, contractors, or employees.

90. In the alternative, Section 15 is unenforceable under South Carolina law because it is broader than necessary to protect the goodwill acquired by the Companies. Among other defects, Section 15 applies throughout the United States; it reaches software products although the Companies sell consulting services; and its duration is tied to a Calculation Period that is extended whenever the Companies' revenue falls below a specified threshold, leaving its length indefinite and within the Companies' control. South Carolina courts will not rewrite an overbroad restrictive covenant.

91. Plaintiff is informed and believes that this Court should find and hold that:

a. the Agreement does not permit the Companies to withhold, suspend, or set off Additional Consideration based upon an alleged breach of Section 15;

b. AutomateNetOps does not engage in the "Business" as defined in the Agreement;

c. Plaintiff has not breached Section 15 or any other provision of the Agreement;

d. Plaintiff's ownership of, investment in, or role with AutomateNetOps would not violate Section 15;

e. in the alternative, Section 15 is unenforceable; and

f. the Companies remain obligated to pay Additional Consideration, together with the accountings required by Section 2(e), for the remainder of the Calculation Period, up to the Payment Cap.

92. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement, and from all Defendants as otherwise permitted by law.

**FOR AN EIGHTH CAUSE OF ACTION**
**(Breach of Contract Accompanied by Fraudulent Act as to BLS Ops, LLC and BLS Government Services, LLC)**

93. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

94. Plaintiff entered into the Agreement with the Companies as referenced above.

95. Notwithstanding the Agreement, and Plaintiff's full and complete performance of it, the Companies breached the Agreement in the manner described above, and, as a result, Plaintiff has suffered damages.

96. Accompanying their breaches of the Agreement, the Companies committed fraudulent acts constituting dishonesty in fact, unfair dealing, and/or the unlawful appropriation of Plaintiff's property by design. When the Companies breached the Agreement, they took the position that Plaintiff had violated the covenant not to compete, although they had no evidence that Plaintiff had engaged in, or held an interest in any business engaged in, the "Business," or had solicited any customer, vendor, contractor, or employee of the Companies.

97. Upon information and belief, the Companies issued their cease-and-desist letter within days after Plaintiff's name appeared on the AutomateNetOps website, without any investigation of whether AutomateNetOps engaged in the "Business." The letter misspelled Plaintiff's name, demanded a response within one day, and was sent on April 14, 2026, the day before a quarterly payment date under the Agreement.

98. The Companies then stopped paying Plaintiff and conditioned any further payment on Plaintiff proving to their satisfaction that he had not breached the Agreement, a condition that appears nowhere in the Agreement. After Plaintiff provided sworn affidavits and extensive public documentation showing that AutomateNetOps does not compete with the Companies, the Companies still did not identify any competing activity and still refused to pay.

99. The Companies' claim that Plaintiff violated the covenant not to compete was a mere pretext, pretense, and excuse for their own failure and refusal to honor their payment obligations under the Agreement.

100. Upon information and belief, the Companies asserted that claim, knowing it lacked any factual basis, for the purpose of avoiding their obligation to pay Plaintiff the remaining Additional Consideration, which amounts to a substantial sum through the end of the

Calculation Period, and to pressure Plaintiff into surrendering rights he holds under the Agreement.

101. The Companies committed these acts with a deliberate and fraudulent intent, for the purpose of breaching the Agreement and of depriving Plaintiff of his rights under it. The Companies' dishonesty and unfair dealing accompanied their breaches of the Agreement.

102. As a direct and proximate result of the fraudulent acts accompanying the Companies' breaches of the Agreement, Plaintiff has been damaged and has suffered actual, consequential, and special damages, including, but not limited to, the loss of the Additional Consideration due under the Agreement, prejudgment interest at the rate of 8.75% per annum pursuant to S.C. CODE ANN. § 34-31-20(A), plus such other actual, consequential, special, and incidental damages as the evidence may show, and his costs and expenses incurred in the prosecution of this action.

103. Plaintiff is further entitled to recover punitive damages from the Companies in an amount to be determined by the trier of fact.

104. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

**FOR A NINTH CAUSE OF ACTION**
**(Breach of Contract; Specific Performance**
**as to BLS Ops, LLC and BLS Government Services, LLC)**

105. Plaintiff repeats and re-alleges each and every preceding paragraph as if each were fully repeated verbatim herein.

106. Plaintiff entered into the Agreement with the Companies as referenced above, which contract the Companies have breached in the manner stated herein.

107. Although Plaintiff has demanded that the Companies perform their obligations under the Agreement, including that they pay the Additional Consideration due, the Companies have refused and failed, and continue to refuse and fail, to perform.

108. The Companies' obligations under the Agreement are continuing. They require quarterly payments calculated from information solely within the Companies' possession, itemized accountings with each payment, and access to the Companies' books and records through the end of the Calculation Period and for six months thereafter. Having repudiated those obligations, the Companies would require Plaintiff to file successive actions to recover each installment as it comes due.

109. Plaintiff has no complete and adequate remedy at law that would be as efficient to attain the ends of justice and its prompt administration as would a decree of specific performance requiring the Companies to honor the terms and provisions of the Agreement, including:

a. paying Plaintiff all Additional Consideration due and to become due through the end of the Calculation Period, up to the Payment Cap, and

b. providing the itemized accountings and access to books and records required by Section 2(e).

110. Plaintiff is further entitled to recover from the Companies, jointly and severally, his reasonable attorneys' fees and costs incurred in the prosecution of this action, pursuant to Section 9(b) of the Agreement and as otherwise permitted by law.

WHEREFORE, Plaintiff prays for judgment and/or order against the Defendants as follows:

(a) awarding Plaintiff actual, compensatory, consequential, special, and incidental damages against Defendants BLS Ops, LLC and BLS Government Services, LLC,

jointly and severally, in the amount of all unpaid Additional Consideration, including each installment that comes due during the pendency of this action, as determined by the trier of fact;

(b) awarding Plaintiff punitive and exemplary damages against Defendants BLS Ops, LLC and BLS Government Services, LLC as permitted by law;

(c) requiring Defendants BLS Ops, LLC and BLS Government Services, LLC to specifically perform their obligations under the Agreement, including paying all Additional Consideration due and to become due through the end of the Calculation Period, up to the Payment Cap, and providing the itemized accountings and access to books and records required by Section 2(e);

(d) requiring Defendants BLS Ops, LLC and BLS Government Services, LLC to provide a full and complete itemized accounting for each quarter of the Calculation Period and to permit Plaintiff and his agents to inspect and copy their books and records, and awarding Plaintiff any Additional Consideration shown to be due;

(e) awarding Plaintiff actual damages in the amount of the unpaid 2024 tax distributions;

(f) awarding Plaintiff actual, compensatory, consequential, special, and incidental damages against Defendants Micheal Reski, Philip Hartlieb, and Larry Campbell, jointly and severally, as determined by the trier of fact;

(g) awarding Plaintiff all losses he has incurred, including his reasonable attorneys' fees and costs, against all Defendants, jointly and severally, pursuant to Section 9(b) of the Agreement, or as otherwise permitted by law;

(h) entering a declaratory judgment as set forth in Paragraph 91 above;

(i) awarding Plaintiff pre-judgment interest at the rate of 8.75% per annum pursuant to S.C. CODE ANN. § 34-31-20(A) and post-judgment interest as allowed by law;

(j) awarding Plaintiff the costs of this action; and

(k) awarding such other and further legal and equitable relief as the Court deems just and proper.

**ROSEN HAGOOD, LLC**
/s/ *Elizabeth Nicholson*______________
Daniel F. Blanchard, Fed ID No. 6285
Elizabeth Nicholson, Fed. ID No. 12402
enicholson@rosenhagood.com
dblanchard@rosenhagood.com
40 Calhoun Street, Suite 450
Charleston, SC 29401
(843) 577-6726 telephone
(843) 724-8036 facsimile

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
November 16, 2026.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action for all issues so triable.